**HOTEL ASSOCIATES OF UTAH AND COLORADO, Reina California Corporation, Plaintiffs,**

v.

**HOLIDAY INNS, INC., Defendant.**

**Civ. No. 90–C–929G.**

United States District Court,
D. Utah, C.D.

Nov. 18, 1993.

this lawsuit is tried and judgment is entered. *See* *supra* note 1.

Ralph J. Marsh, Salt Lake City, UT, and John S. Huiskamp, San Diego, CA, for plaintiffs Hotel Associates of Utah and Colorado and Reina California Corp. ("Hotel Associates").

Alan L. Sullivan and Kathryn H. Snedaker, Salt Lake City, UT, for defendant Holiday Inns, Inc.

## MEMORANDUM DECISION AND ORDER

J. THOMAS GREENE, District Judge.

This matter came before the court October 1, 1993, on defendant's Motion for Reconsideration. Plaintiffs, Hotel Associates of Utah and Colorado and Reina California Corporation, ("Hotel Associates"), were represented by Ralph J. Marsh and John S. Huiskamp. Defendant Holiday Inns, Inc. was represented by Allan L. Sullivan and Kathryn H. Snedaker. The matter had been fully briefed and argued. The court orally granted the motion for reconsideration and reversed its earlier ruling granting a new trial.

1. The jury returned for the first time on May 10, 1993, at 10:55 p.m. The verdict was not fully published by the court until 1:05 a.m. on May 11.

2. Hotel Associates also argued that it was entitled to a new trial because the court had erroneously reinstructed the jury with respect to excuse of breach of contract and did so in a manner that deprived counsel of an opportunity to address the new instruction or request additional instructions.

The court hereby supplements its bench ruling with the following Memorandum Decision and Order.

## PROCEDURAL BACKGROUND

Following a two-week jury trial, a Special Verdict was returned by the jury on three separate occasions.[1] As published by the court, plaintiff Hotel Associates was awarded nothing by way of damages. As originally presented, the jury's unpublished Special Verdict would have awarded Hotel Associates $1,111,512 in damages.

When the jury first returned and the foreman had announced that a unanimous verdict had been reached, after publication of a portion of the verdict, the court noticed a possible failure of the jury to have read and correctly followed instructions on the original special verdict. The court directed the jury to resume deliberations and to reread the instructions in the special verdict form to be sure that the answers were as intended in light of the instructions. The jury returned for the second time and was given certain clarifying instructions, after which deliberations were resumed. The jury returned for the third time rendering a final verdict, which was published by the court, in favor of defendant Holiday Inns and against Hotel Associates. Thereafter, Hotel Associates moved for judgment on the verdict, to reinstate the original verdict or in the alternative for a new trial.

On July 9, 1993, the court heard arguments on plaintiffs' motion. Hotel Associates argued that they were entitled to a new trial because the court had "coerced" the jury into striking the damages which the jury had intended to award to Hotel Associates.[2] The court concluded that while it did not coerce the jury, a new trial on the contract claim[3]

3. The trial involved both contract and fraud causes of action. The jury originally assessed damages against Holiday Inns on the fraud claim even though it had determined no liability in fraud. Also, there was a numbering error on the verdict form with respect to the fraud issue. By the time the verdict was published, the jury had corrected and made consistent its verdict awarding plaintiffs nothing on the fraud claim. A new trial was not granted on the fraud issue and the

was warranted because the jury was confused.

Holiday Inns has moved the court to reconsider its decision rendered July 9, for three reasons: *first,* that juror confusion, or possible confusion, is an insufficient justification to set aside a jury verdict and to grant a new trial; *second,* this jury was not confused on the issue of excuse; and *third,* that Hotel Associates created any confusion the jury might have experienced and a party who creates confusion at trial cannot later complain of that confusion.

## FACTUAL BACKGROUND

On the evening of May 10, and the early morning of May 11, 1993, the jury returned with a verdict three separate times before the verdict was fully published by the Court. The chronology of the evening is set forth below in considerable detail.

### The First Return:

The jury returned with its completed answers to all questions in a Special Verdict.[4] After the Deputy Clerk of the Court publish-

jury's finding with regard to fraud is not implicated or addressed in this Memorandum Decision and Order.

4.

The special verdict with the answers filled in as presented to the court when the jury first returned was as follows:

PLAINTIFFS' CLAIM OF BREACH OF CONTRACT

1. Do you find by a preponderance of the evidence that Holiday Inns breached any of the provisions of the Management Agreement as set forth in Instruction No. 15 and the other instructions concerning Hotel Associates' breach of contract claims?
ANSWER: **"YES"**

INSTRUCTION: If you answered question 1 above "No," do not answer Questions 2 to 7, but proceed to answer question No. 8. If the answer to question No. 1 is "Yes," proceed to answer question Nos. 2 to 4 below.

2. Was any breach of contract by Holiday Inns excused by Hotel Associates' failure to substantially perform its duties under the Management Agreement?
ANSWER: **"YES"**

3. Was any breach of contract by Holiday Inns relating to any negative cash flow obligation excused by Hotel Associates' failure to do everything it was required to do in order to obtain the Great Western cash flow reserve?
ANSWER: **"NO"**

4. Was any breach of contact [sic] by Holiday Inns relating to any negative cash flow obligation excused by Hotel Associates' fraudulent inducement of the Fourth Amendment of the Management Agreement? ...
ANSWER: **"NO"**

INSTRUCTION: If you answered "Yes" to question 2, do not answer question Nos. 5 to 7, but proceed to question 8. If you answered "No" to questions 2, 3, or 4, proceed to answer question No. 5 below.

5. Was it contemplated by the parties at the time the Management Agreement was entered into, or was it reasonably foreseeable at that time, that if Holiday Inns were to breach the agreement the investments of Hotel Associates in the hotel project would be lost?
ANSWER: **"YES"**

INSTRUCTION: If you answered "No" to question 5 above, do not answer questions 6 to 7, but proceed directly to question 8. If the answer to question No. 5 above is "Yes" proceed to answer question 6.

6. Was the breach of contract by Holiday Inns the cause of the loss of Hotel Associates' investments or any portion of such investments, or was the breach of contract by Holiday Inns the cause of loss of management fees paid by Hotel Associates?
ANSWER: **"YES"**

INSTRUCTION: If you answered "No" to question 6 above, do not answer question 7, but proceed directly to question 8. If the answer to question No. 6 above is "Yes" proceed to answer question 7.

7. What was the amount of loss suffered by Hotel Associates as a result of breach of contract by

Holiday Inns?

| | |
|---|---|
| ATD Group Investment | $ 1,000,000 |
| Turnmar Investment | $ 1 |
| Management fees paid | $ 111,511 |
| Total | $ 1,111,512 |

ed the first four answers in the verdict, the court noted that although the jury had answered "Yes" to question 2, it answered questions 5 through 7, contrary to the instruction preceding question 5.[5] The court halted publication of the verdict and the jury was then asked to retire again, and in view of the instruction preceding question 5, to determine whether the jury "had intended in connection with that instruction to go forward from that point."[6] Reporter's Transcript of May 10, 1993, p. 4.

*The Second Return:*

The jury returned for the second time, and the foreman stated to the court, "Your Honor, I think we have learned to read the instruction properly this time." *Id.* At this point, the jury had changed its answers to questions 5 and 6 from "Yes" to "No" and had stricken the damages amount in question 7.

Upon further review of the verdict form it appeared to the court that the instruction preceding question 5 contained inconsistent directions. On one hand, the jury was directed to skip questions 5 through 7 if the answer to question 2 was "Yes." On the other hand, the instruction directed the jury to answer questions 5 through 7 if the answer to questions 2, 3, or 4 was "No." Question two was answered "Yes" and questions three and four were answered "No."

The court explained to the jury that the intent of the instruction was that an affirmative answer to question 2 would resolve the contract cause of action in its entirety "and there would be no need to answer any further questions on the breach of contract issues." *Id.* at 6. The court queried counsel

PLAINTIFFS' CLAIM OF FRAUD

INSTRUCTION: Answer question 8.

8. Do you find by clear and convincing evidence that Holiday Inns made any false representation of a presently existing material fact to plaintiffs?
ANSWER:     **"NO"**

INSTRUCTION: If you answered "no" to question 8, skip questions 9 to 12 below and proceed directly to question 13. If you answered "yes" to question 8 above, answer questions 9 to 12 below.

9. Do you find by clear and convincing evidence that Holiday Inns knew at the time that its representations to plaintiffs were false or were made with reckless indifference?
ANSWER:     **blank**

10. Do you find by clear and convincing evidence that Holiday Inns intended to cause plaintiffs to rely on the representations?
ANSWER:     **blank**

11. Do you find by clear and convincing evidence that plaintiffs relied on any false representation by Holiday Inns in making its investment in the hotel, borrowing money, or entering into the Management Agreement?
ANSWER:     **blank**

12. Do you find by clear and convincing evidence that the plaintiffs reliance, if any, was reasonable under the circumstances?
ANSWER:     **blank**

INSTRUCTION: If you answered "No" to any of the questions 8 to 12 above, do not answer question 13 and proceed to question 14. Otherwise answer question 13 below.

13. What is the amount of damages, if any, that you find that plaintiffs suffered as the result of Holiday Inns' false representations?
ANSWER:     **$1,111,512**

INSTRUCTION: If, in response to both questions 7 and 13 above you entered an amount of damages, any duplication of such damages must be eliminated since plaintiff would not be entitled to recover twice for the same damages suffered. Accordingly, set forth below in question 14 the amount of damages, if any, you determine plaintiff is entitled to recover after eliminating any duplicative amounts.

14. What is the total amount of damages, if any, Hotel Associates is entitled to recover?
ANSWER:     **$1,111,512**

INSTRUCTION: Please date and sign this form, and return to the courtroom with the form.

DATED:     May   10 , 1993.

/s/ Douglas A. Tullis
FOREPERSON

**5.** The instruction preceding question 5 directed the jury to skip questions 5 through 7 if the answer to question 2 was "Yes".

**6.** The court continued, "I just want you to review that before the balance of the verdict is published."

whether they agreed that such was the intent of the direction preceding question 5. *Id.* Counsel for Holiday Inns agreed. *Id.* Counsel for Hotel Associates expressed concern that question 2 did not adequately address which breach by Holiday Inns was excused by Hotel Associates' failure to perform. The following colloquy ensued:

Mr. Marsh: My question is number 2 asked, is any breach of contract by Holiday Inns excused. In my mind the question is which one we're talking about, more than one breach. One could be excused and—

The Court: We've referred in Question Number 1, do you find by a preponderance of the evidence that Holiday Inns breached any of the provisions of the management agreement and Question Number 2 has to do with was any such breach of contract excused.

If you found that there was a breach of contract, was any such breach of contract excused.

Mr. Marsh: What I'm suggesting, that doesn't answer the question as to whether *all of the breaches* were excused.

The Court: Well ... I think the intent was that if there was any breach of any, any such breach that has been found to exist, if it was excused. It may be if you both agree that we should change that to ... were any and all breaches of the contract by Holiday Inns excused.

Mr. Sullivan: Your Honor, I think the question is fine as it is in light of the court's instruction....

The Court: Well, I'm simply going to state to the jury what the intent was ... I'm going to make it clear if there is any lack of clarity ... So that Number 2 reads, *were any and all breaches of contract by Holiday Inns which you find to exist, to have occurred, excused.* Now with that understanding of Question Number 2, you [members of the jury] should review again the instruction at the top of page 3 prior to the answer, to the giving of Number 5....

*Id.* at 7–8 (emphasis added). Pursuant to the above discussion, question 2 of the verdict form was modified in open court by interlineation.[7] The court then returned the verdict form to the foreman and directed the jury to recommence its deliberations.

As the jury continued deliberating, the court discussed with counsel the possibility of further clarifying any confusion the jury might have with respect to question 2. Counsel for defendant stated his position that the question need not be changed, and that the court's modification adequately addressed the concern as to which of the breaches was excused. *See id.* at 9. Counsel for plaintiffs stated that "maybe we should have added a question with respect to each one of the breaches." *Id.* at 10. The court responded in essence that counsel for plaintiffs' should have considered that matter prior to this stage of the game.[8]

The court inquired of counsel whether a supplemental instruction should be submitted to the jury to clarify the instruction with respect to materiality of the breach. *Id.* Both counsel for the defendant and for plaintiffs agreed that the instructions should be left alone, without further modifications.[9] *See id.* at 11. Nevertheless, the court again solicited suggestions from counsel as to how the matter could be clarified. *Id.* at 13. Counsel for defendant suggested asking whether the jury, in answering "Yes" to the original question 2, intended to find that Hotel Associates committed a substantial and material breach. *Id.* at 19. Counsel for plaintiffs objected on the ground that the

---

7. Question 2 as modified on the face of the verdict form was as follows:

Were any and all breaches of contract by Holiday Inns which you find to have occurred excused by Hotel Associates' failure to substantially perform its duties under the Management Agreement?

8. As discussed *infra*, at Section III.A., Holiday Inns' proposed special verdict particularized each alleged breach. Hotel Associates objected to Holiday Inns' proposed verdict on the ground that "the general claim should be sufficient." The court rejected Holiday Inns' proposed special verdict in this respect and adopted the request of Hotel Associates.

9. The court queried: "Do you both agree that we should leave it as it is?"

Mr. Marsh: I think so, Your Honor.
Mr. Sullivan: Yes.
Reporter's Transcript at 11.

instruction did not address "more than one breach." *Id.* Counsel for plaintiffs voiced his concern that if the jury answered modified question 2 "No", then the inconsistency would not be resolved. *Id.* at 20.

The court then drafted and sent into the jury room a supplemental instruction directing the jury to answer an additional question, which was numbered 2a:

> In answering "yes" to original question #2, did you intend to find that Hotel Associates committed a substantial or material breach of the Management Agreement as set forth in Instruction No. 21? [10]

YES _ NO _

*The Third Return:*

The jury returned for the third time, having answered "Yes" to question 2a. Questions 5 and 6 had a scratch mark in the "No" column.[11] To determine whether the mark indicated a "No" answer or withdrawal of a "No" answer, the court inquired thusly of the jury foreman:

> The Court: My understanding, ladies and gentlemen, is that as to answer Number 5, the answer is no, is that correct?
>
> The Foreman: I believe Your Honor according to the instructions, we were requested to answer Question 2 and then instructed if we answered it yes to Question 8, Questions 5—beyond question two, we were instructed to go to question 8 and answer that and follow the instruction following Question 8.
>
> The Court: So that the marks that I had just observed in number 5 and 6 were not intended to represent an answer?
>
> The Foreman: No, sir. Those are that they are not applicable because of the instruction clarification.

> The Court: All right. The answer to Number 5 then is that it's left blank; there is no answer to 5 and there is no answer to Number 6 and there is no answer to Number 7?
>
> The Foreman: That is correct, sir.

Reporter's Transcript at 26–27. The remainder of the special verdict was then published, the jury was polled and finally discharged.

## ANALYSIS

### I. *Coercion of the jury's verdict.*

At the post-verdict hearing on July 9, 1993, the court rejected the contention that it had coerced or improperly influenced the verdict rendered by the jury. *See Shultz v. Rice,* 809 F.2d 643, 655 (10th Cir.1986) (a new trial should be granted where an error causes " 'actual prejudice because it 'had substantial and injurious ... influence in determining the jury's verdict.' ' ") (quoting *United States v. Lane,* 474 U.S. 438, 449, 106 S.Ct. 725, 732, 88 L.Ed.2d 814 (1986)).[12] *See also Nance v. Gulf Oil Corp.,* 817 F.2d 1176, 1179 (5th Cir.1987) ("the mere resubmission of a verdict form does not necessarily 'coerce' a verdict").

### II. *Confusion in the Jury Verdict.*

**A.** The court has a constitutional duty to reconcile inconsistent verdicts.

■ The Seventh Amendment to the United States Constitution protects the sanctity of jury verdicts. "[N]o fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law." United States Constitution, Amendment VII. Accordingly, this court has a duty to reconcile inconsistent verdicts and to avoid retrial. *Atlantic & Gulf Stevedores v. Ellerman Lines,* 369 U.S. 355, 364, 82 S.Ct. 780, 786, 7 L.Ed.2d 798

---

**10.** Instruction No. 21, as given to the jury, was as follows:

> If one party to the Management Agreement commits a substantial or material breach of the Agreement, the other party is excused from further performance of the agreement.
>
> A substantial or material breach is one that touches the fundamental purposes of the Agreement and defeats the object of the parties in making the Agreement.

**11.** As noted above, the second time the jury returned with a verdict, the answers to questions 5 and 6 had been changed from "Yes" to "No."

**12.** *United States v. Lane* involved interpretation of the harmless-error rule as applied in a criminal prosecution.

(1962) ("Where there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way."); *Harris Market Research v. Marshall Marketing & Communications, Inc.,* 948 F.2d 1518, 1522 (10th Cir.1991) (citing *Harvey ex rel. Harvey v. General Motors Corp.,* 873 F.2d 1343, 1347 (10th Cir. 1989)); *Guidry v. Kem Manufacturing Co.,* 598 F.2d 402, 406 (5th Cir.1979), *cert. denied,* 445 U.S. 929, 100 S.Ct. 1318, 63 L.Ed.2d 763 (1980) (The danger of conflicting answers is "mitigated by the court's duty, arising from the seventh amendment guarantee of the right to jury trial, to reconcile apparently conflicting answers ... and thus validate the jury verdict.").

■ Counsel for Hotel Associates and Holiday Inns agree that the verdict form as originally submitted to the jury contained internally inconsistent instructions. The court noted the inconsistency before the verdict was fully published and before the jury was discharged. In such circumstances, the trial court has broad discretion in resolving conflicting verdict answers. *Kavanaugh v. Greenlee Tool Co.,* 944 F.2d 7, 10 (1st Cir. 1991). The trial court can resubmit an inconsistent verdict to the jury to clarify the inconsistency. *Nance,* 817 F.2d at 1178; *Auwood v. Harry Brandt Booking Office, Inc.,* 850 F.2d 884, 891 (2nd Cir.1988); *Santiago–Negron v. Castro–Davila,* 865 F.2d 431, 444 (1st Cir.1989) (it is appropriate to resubmit a special verdict form to the jury where the answers are inconsistent, the attorneys are present and the jury has not been discharged). The trial court can also submit supplemental instructions to assist the jury. *Nance,* 817 F.2d at 1179; *Santiago–Negron,* 865 F.2d at 442–44.

The answer to question two was inconsistent with the answers to questions three and four, and the instruction preceding question

5 was inconsistent within itself. The court gave some clarifying instructions and resubmitted the verdict to the jury for further deliberations. The court modified question 2, to determine whether the jury had intended to find that Holiday Inns was excused from any and all breaches. The jury's affirmative answer to modified question 2 resolved or rendered moot any inconsistency between the verdict answers as well as the inconsistency within the verdict form instructions.[13]

■ Even though the court attempted to clarify any confusion and to reconcile apparent inconsistencies when the verdict was returned, the court orally granted a new trial at the hearing on July 9, 1993, because of a concern that the jury was confused. The court now believes that a new trial should not have been granted.

B. A new trial is not warranted in this case.

1. The jury was not confused on the critical issue: excuse of breach of contract.

The jury was not confused on the issue of whether Holiday Inns' breach or breaches were excused by Hotel Associates' failure to perform. On three occasions the jury responded that Holiday Inns was excused because of Hotel Associates' failure to perform. *First,* when the jury initially returned, question 2 had been answered "Yes." An affirmative answer to question 2 established that although the jury found that Holiday Inns breached the Management Agreement, "any breach" by Holiday Inns was excused because of Hotel Associates' failure to substantially perform.

*Second,* the jury affirmatively answered modified question 2, indicating its finding that "any and all" of Holiday Inns' breaches were excused by Hotel Associates' conduct.[14]

---

**13.** It is clear to the court that the jury understood that an affirmative answer to modified question 2 would end the contract matter and accordingly resolve any inconsistency within the verdict. The jury foreman explained to the court the jury's understanding of the court's instruction:

> [A]ccording to the instructions, we were requested to answer Question 2 and then in-

structed if we answered it yes ... to go to Question 8....

Reporter's Transcript of May 10, at 27.

**14.** Question 2 was modified in direct response to a concern voiced by counsel for plaintiffs that the jury may not have been responding to all breaches by Holiday Inns. The question was modified to clarify whether the jury intended that "any

*Third,* the jury answered question 2a [15] "Yes," confirming its finding that Hotel Associates' failure to substantially perform constituted a substantial or material breach. Moreover, when the jury returned with the final verdict, the court asked whether "the answer to Question Number 2 is the same under the original question as it is under the modified question," and the jury foreman answered, "Yes." Reporter's Transcript at 25.

The jury's verdict never changed on the essential question of whether Holiday Inns was excused. It is manifest that even though the jury may have experienced some confusion in being asked to return and deliberate twice before the full verdict was published,[16] there was absolutely no confusion with respect to the crucial question of excuse.

2. Possible juror confusion is not a sufficient reason to grant a new trial.

■■■ A jury verdict should be overturned and a new trial granted only if the trial errors were "prejudicial and clearly erroneous." *Shultz v. Rice,* 809 F.2d 643, 655 (10th Cir.1986) (citations omitted). The possibility of juror confusion is not a proper ground for a new trial, *Mid–West Underground Storage, Inc. v. Porter,* 717 F.2d 493, 501 (10th Cir.1983), and a court may not inquire into the internal workings of the jury's decisional processes on the mere suspicion of confusion. *Beron v. Kramer–Trenton Co.,* 402 F.Supp. 1268, 1271 n. 5 (E.D.Pa. 1975), *aff'd,* 538 F.2d 318 (3rd Cir.1976). A "verdict will not be upset on the basis of speculation as to the manner in which the jurors arrived at it." *Mid–West Under-*

*ground Storage, Inc.,* 717 F.2d at 501 (citations omitted).

In *Mid–West Underground Storage,* the jury returned a verdict which appeared to be the result of confusion.[17] 717 F.2d at 500. The trial court granted a new trial but subsequently reversed itself and denied the motion for a new trial. *Id.* The Tenth Circuit Court of Appeals affirmed the trial court, and determined that there were two possible explanations for the jury's verdict, one of which was confusion and the other was simply that the evidence supported the jury's verdict. *Id.* at 501. When a court is faced with a choice of a proper jury verdict and a possible instance of jury confusion, the court is not free to "exercise [its] own judgment as to the most plausible." *Id.* The Circuit recognized that "the traditional sanctity of jury verdicts" constitutes a barrier to reversing a jury verdict and to speculating as to how the jury may have arrived at its verdict. *Id.* "To allow a judge to question a jury's process of deliberate decision, even though done in good faith to avoid an apparent miscarriage of justice, could result in abuses far outweighing the infrequent inability to correct what may *appear* to be or is erroneous or a misunderstanding. . . ." *Id.* (quoting *Chicago, Rock Island and Pacific Railroad v. Speth,* 404 F.2d 291, 295 (8th Cir.1968) (emphasis in original)).

Counsel for Hotel Associates argues that a miscarriage of justice occurred because the jury *could have* interpreted the court's modification of question 2 as instructing the jury that *any breach by Hotel Associates* would exonerate *all prior breaches by Holiday Inns.* *See* Reporter's Transcript of July 9,

and all breaches" of Holiday Inns' were excused by Hotel Associates' failure to perform its duties.

**15.** The relevant portion of Question 2a reads:

In answering "yes" to original question # 2, did you intend to find that Hotel Associates committed a substantial or material breach of the Management Agreement as set forth in Instruction No. 21?

*See supra* note 10, for the text of Instruction No. 21.

**16.** After the verdict was published and the jury discharged, counsel for plaintiffs obtained an affidavit from the jury foreman, stating that the

jury had indeed been confused. The court sustained Holiday Inns' motion to strike the affidavit, and did not rely upon that affidavit in granting the motion for a new trial. The court struck the affidavit because of the mischief which comes about when a member of a jury is allowed to second guess the jury's unanimous verdict and to reconstruct the deliberation processes. *See Castleberry v. NRM Corporation,* 470 F.2d 1113, 1117–1118 (10th Cir.1972).

**17.** The jury denied defendant's counterclaim, and yet granted damages to plaintiff, on a claim which was dependent upon the success of defendant's counterclaim, in the exact amount sought in the counterclaim.

1993, p. 43.[18] In essence, plaintiffs are asking this court to speculate that the jury misinterpreted the modification to question 2, became confused and felt compelled to render a verdict in favor of Holiday Inns.

When the jury rendered its final verdict awarding no damages to Hotel Associates, the court was faced with two possible explanations of that verdict. One, that the jury may have been confused, and two, that the jury intended from all of the facts and circumstances to determine that Holiday Inns was excused from whatever breaches it may have committed because of the conduct and actions of Hotel Associates. At the hearing on July 9, the court stated that it appeared the jury had been confused, and announced its intention to resolve the "close question" as to whether that confusion should mandate a new trial by granting a new trial. Upon reconsideration, the court acknowledges, as the Tenth Circuit concluded in *Mid–West Underground Storage,* that this court was not free to "exercise [its] own judgment as to the most plausible" choice and to conclude that the verdict was the result of confusion rather than the jury's deliberate consideration of all of the evidence.

It would violate the sanctity of jury verdicts for this court to speculate on the matter, and to reverse the jury's verdict because the court believed that there was confusion or a misunderstanding.

18. Mr. Huiskamp stated:

> Well my argument is that that change *can be interpreted* to mean that one breach by Hotel Associates would exonerate all prior breaches by Holiday Inns. The language of that change leaves it open to that interpretation.... [T]he face of it shows that that was an interpretation that *could have been* made.

Reporter's Transcript of July 9, at 43.

19. *See, infra* note 22 for text of Jury Instruction No. 21.

20. Hotel Associates' proposed two forms of verdict, both of which required the jury to answer "yes" or "no" to the question whether Holiday Inns breached the management agreement.

Hotel Associates originally proposed this question in its verdict form:
1. Did Holiday Inns breach the Management Agreement?
YES _ NO _

III. *Doctrine of Invited Error.*

A party may not complain of errors committed at trial which that party "induced or invited." *Neu v. Grant,* 548 F.2d 281, 287 (10th Cir.1977) (citations omitted). Moreover, it is axiomatic that a party cannot sit idly by, watching errors being committed and then urge those errors as the basis for a new trial. *See Chevron, U.S.A., Inc. v. Hand,* 763 F.2d 1184, 1186 (10th Cir.1985).

In the case at bar, Hotel Associates acceded to the instructions in the special verdict, acquiesced in the resubmission of the verdict to the jury, suggested the very modification to the verdict form about which they now complain, and actually drafted the excuse instruction given the jury.[19] Hotel Associates cannot now cry "foul play" because the instructions and modifications failed to gain them an advantage. *Nance,* 817 F.2d at 1179; *Kavanaugh,* 944 F.2d at 10; *Turchio v. D/S/ A/S Den Norske Africa,* 509 F.2d 101, 106 (2nd Cir.1974).

A. The court adopted a Special Verdict consistent with Hotel Associates' proposed form of verdict.

Hotel Associates' fundamental position was that the jury should be presented with one general question as to whether Holiday Inns breached the Management Agreement.[20]

Hotel Associates later proposed a more detailed question in its verdict form, still only requiring one answer of "yes" or "no":
1. Did Holiday Inns breach the Management Agreement in one of the following ways:
   a. Did Holiday Inns breach the Management Agreement by failing to use its best efforts to operate the hotel in an economical and efficient manner to maximize gross operating profit and adhere to the yearly budgets approved by Hotel Associates?
   b. Did Holiday Inns breach the Management Agreement by failing to obtain agreement regarding operating budgets or to operate according to agreed budgets?
   c. Did Holiday Inns breach the Management Agreement by refusing to make available the $1 million reserve to cover negative cash flow of the hotel?
   d. Did Holiday Inns breach the Management Agreement by terminating its performance and refusing to manage the hotel under the Management Agreement?
YES _ NO _

215

Holiday Inns objected on the grounds that each provision alleged to have been breached should be particularized in the verdict form "to encourage accuracy and avoid confusion." *See* Holiday Inns' Objection to Hotel Associates' Proposed Special Verdict at 1. Holiday Inns' proposed form of verdict included each specific provision alleged to have been breached. Hotel Associates objected to Holiday Inns' proposed verdict, stating that "the general claim should be sufficient." *See* Plaintiff's Objections to Holiday Inns' Proposed Special Verdict at 1.

The court, over Holiday Inns' objection, submitted to the jury the form of verdict suggested by Hotel Associates which did not require identification of each alleged breach or the corresponding contractual provisions.[21] When the issue surfaced as to whether question 2 was broad enough to encompass excuse of *all* breaches by Holiday Inns, and the matter was discussed in the presence of the jury, counsel for plaintiffs not only agreed with the court that the jury should respond to the question whether *any and all* breaches of Holiday Inns were excused, but suggested the very language the court presented to the jury. Under these circumstances, because of its conduct, Hotel Associates cannot now come before this court and complain that the court "coerced" the jury, prejudicially modified the verdict form, improperly supplemented the jury instructions, or that the court committed prejudicial error by submitting a special verdict form which failed to particularize each alleged breach. *See Reazin v. Blue Cross and Blue Shield of Kansas,*

*Inc.,* 663 F.Supp. 1360 (D.Kan.1987), *aff'd,* 899 F.2d 951 (10th Cir.), *cert. denied,* 497 U.S. 1005, 110 S.Ct. 3241, 111 L.Ed.2d 752 (1990) (court denied defendant's motion for new trial on basis of supplemental jury instruction to which the defendant had acquiesced); *Nania v. Pacific Northwest Bell Telephone Co., Inc.,* 60 Wash.App. 706, 806 P.2d 787, 789 (1991) (new trial properly denied where defendant insisted on the modification in the special verdict form which resulted in the claimed inconsistency urged as a basis for new trial); *Schaffer v. Pulido,* 492 So.2d 1157 (Fla.App.1986) (order granting new trial at plaintiff's insistence reversed where the plaintiff submitted the jury instruction and verdict form given the jury).

**B.** The court adopted Hotel Associates' proposed jury instruction on the law of excuse.

The court instructed the jury on the law of excuse of breach of contract in Jury Instruction 21.[22] Hotel Associates objected to an alternative instruction proposed by Holiday Inns,[23] arguing that Holiday Inns' instruction did not clearly address the concept that a material breach excuses further performance, but not all obligations under the agreement. Counsel for Hotel Associates articulated this "timing" concern objection by urging that a material breach by Hotel Associates in June, 1986, could excuse Holiday Inns from further performance, but it would not absolve Holiday Inns from any prior breaches.

21. Question 1 of the special verdict form as submitted to the jury was as follows:
Do you find by a preponderance of the evidence that Holiday Inns breached any of the provisions of the Management Agreement as set forth in Instruction No. 15 and the other instructions concerning Hotel Associates' breach of contract claims?

22. Instruction # 21, as given to the jury, was as follows:
If one party to the Management Agreement commits a substantial or material breach of the Agreement, the other party is excused from further performance of the agreement.
A substantial or material breach is one that touches the fundamental purposes of the Agreement and defeats the object of the parties in making the Agreement.

23. Holiday Inns submitted the following proposed jury instruction:
Any failure by Holiday Inns to perform under the management agreement is excused if Hotel Associates committed a substantial or material breach of the management agreement.
A substantial or material breach is one that touches the fundamental purposes of the contract and defeats the object of the parties in making the contract.
Thus, if you find from a preponderance of the evidence that Hotel Associates committed a substantial or material breach of the management agreement, Holiday Inns had no further obligation to Hotel Associates under the management agreement.

The court adopted Hotel Associates' proposed instruction, Alternative No. 25, which was given as Instruction Number 21.[24] The court agreed that plaintiffs' instruction on excuse sufficiently addressed any concern with "timing" that the plaintiffs might have had. Plaintiffs cannot now complain that the jury was not sufficiently or correctly instructed on the matter of excuse of a breach. *See Wood v. President & Trustees of Spring Hill College,* 978 F.2d 1214, 1223 (11th Cir. 1992) (generally, a particular instruction will not constitute plain error if the "objecting party invited the alleged error by requesting the substance of the instruction given").

It is clear to the court that any confusion which may have been experienced by the jury in large part was caused by Hotel Associates' conduct and that Hotel Associates did not take any action to avoid confusion by the jury. Hotel Associates cannot now complain of the very confusion which they created or failed to alleviate.

Based upon the foregoing, it is hereby

ORDERED, that Defendant's Motion for Reconsideration is GRANTED; it is

FURTHER ORDERED, that the previous ruling of this court granting a new trial is REVERSED; it is

FURTHER ORDERED, that the Special Verdict of the jury as it was finally published is accepted by the court, and the court directs that a judgment of no cause of action be entered thereupon.

Counsel for defendant is directed to prepare and lodge with the court a form of Judgment consistent with this Memorandum Decision and Order, after first complying with local rule 206(b).

24. *See supra* note 22 for text of Jury Instruction No. 21.